HABERSHAM, ETC., TURNPIKE COMPANY vs. TAYLOR et al., commissioners.

1. Where a turnpike, under a charter granted in 1840, was required to be kept in good repair, and the justices of the inferior court were required to see that this was done, if it was not kept in good repair subsequently to the act of 1878, a suit therefor was properly brought in the names of the commissioners of turnpikes for the county where the failure to repair occurred.

(a.) A portion of the road being located in Towns county, and an agent being found therein to look after and keep it in order, although he may have resided in another county, the suit was properly returned to the superior court of Towns county, and it had jurisdiction to hear and determine it.

(b.) It was competent for the legislature to change the law as it existed at the time of the chartering of the company as to the manner of enforcing the right of the state, and the party in whose name such proceedings should be had.

2. Where a charter, granted to a turnpike company in 1840, provided as the only penalty or forfeiture to be incurred for failing to keep its road in proper repair, that its toll gates should be thrown open and kept open until it was put in repair, this was part of the contract between the state and the company, and it was not competent for the general assembly, in 1878, to prescribe another and different penalty for a failure of the company to keep its road in repair. The penalties prescribed in the act of 1878 are not applicable to such a charter, and an action to enforce them cannot be maintained.

(a.) If the company shall fail in its duties to the public, the commissioners of turnpikes may proceed to forfeit the charter, or they

may enforce the penalty which their predecessors, the justices of the inferior court, might have done, to the extent and in the manner designated in the charter.

September 16, 1884.

Corporations. Charters. Parties. Constitutional Law. Roads and Bridges. County Matters. Before Judge ESTES. Towns Superior Court. March Term, 1884.

Taylor *et al.*, commissioners of turnpikes of Towns county, commenced an action in that county against the Habersham and Union Turnpike Company, for the purpose of forfeiting its charter and for damages, alleging that a portion of the turnpike was in Towns county and a portion in White; that one Reeves Westmoreland, representing the company, kept a toll gate on the road; that he had been notified to make certain repairs and remove certain obstructions thereon, and had failed to do so. The entry of service was as follows:

"Served the within defendant by leaving a true copy of the within original with his son, J. B. Westmoreland, who is superintending the work on the within described road. This September 3, 1883."
(Signed)                                        E. M. CASTLEBERRY, Sheriff.

A second original was issued for White county.

The defendant pleaded that the superior court of Towns county had no jurisdiction, because all of the parties comprising the turnpike company lived in White county, and the company had no place of doing or transacting business in Towns county, further than working out the road therein The company further pleaded that there had been no legal service, and also the general issue.

The jury found the following verdict:

"We, the jury, find in favor of the plaintiff the sum of one hundred and thirty-five dollars. This 24th day of March, 1884."

Defendant moved for a new trial, on the following among other grounds:

(1.) Because the verdict was contrary to law and evidence and against the weight of evidence.

(2.) Because the court held that the act of 1878, establishing commissioners of turnpikes, under which this suit was brought, did not impair the obligation of the contract contained in defendant's charter.

(3.) Because the penalty of damages was not one imposed by the charter of the company.

(4.) Because the court held that the superior court of Towns county had jurisdiction of the defendant, because four and one-half miles of its road was in that county, although the defendant had no place of business or office therein, but had a toll gate in White county, and all of its owners resided therein. [Appended to this ground is a statement that the plea to the jurisdiction was overruled at a former term, and no exceptions *pendente lite* were taken, nor was the objection renewed at the trial term.]

The motion was overruled, and defendant excepted.

CRANE & JONES; J. J. KIMSEY, for plaintiff in error.

C. J. WELLBORN, by HARRISON & PEEPLES; W. E. CANDLER, for defendants.

HALL, Justice.

The act of 1840, incorporating the Habersham and Union Turnpike (§13), authorizes the justices of the inferior court of Habersham and Union counties, or a majority of them in their respective counties, and makes it their duty, if the road is not kept in good and sufficient repair, according to the true intent and meaning of said act, to order and direct the sheriff in their respective counties, and makes it his duty, to throw and keep open the toll gates until the road shall have been put in repair, to be judged of by the aforesaid justices. The first section of the act provides that the road shall be of "suitable width and dimensions." Acts of 1840, pp. 94, 97. The act of 1878 makes provision for the appointment of commissioners of turnpikes, and defines their power and duties. They

are required to inspect the condition of the road as often as every three months, and to see to it that it is kept in good condition to be traveled over and is graded according to its charter. If the road is found deficient in any of these respects, they are required to make out a statement wherein shall be specified, as nearly as may be, the defects in such road, and serve a copy of the same upon the keeper of the toll gates on the road, which shall be deemed a service on the owners, and if they fail or refuse to make the road in compliance with the terms of its charter, for thirty days after the notice is given, then the commissioners are to institute suit in their own names to forfeit the charter. By another section of the act, the commissioners, where the road is neglected and suffered to get into such condition that it cannot be passed over comfortably by travelers and drayed over successfully, are required to notify the keeper of the toll gate of the condition of the same, and unless the road is immediately repaired and put in good condition, they are to institute the suit provided for in the preceding section of the act. If, upon the trial of this suit, the fault or failure of the company should be deemed insufficient to authorize the forfeiture of its charter, then the measure of damages to the public may be estimated in dollars and cents by the jury trying the same, and judgment may be rendered by the court on this finding, etc. Code, §§719(v), 719(z), 719(aa), 719(bb).

The notice given to the company through their agent by the commissioners, and for a failure to comply with which this suit was brought, required the removal of certain alleged obstructions along portions of the road accurately described, within thirty days, and the road to be worked out immediately and graded according to the charter.

Upon the trial of the case, the jury found a verdict against the company for damages only. Nothing was stated therein as to the sufficiency of the failure complained of to authorize a forfeiture of the charter. The defendant

company made a motion for a new trial, upon various grounds, which being overruled, exception was taken to the judgment rendered thereon, and the case brought to this court by writ of error.

To dispose of this case, it will not be necessary to pass upon all the questions made by the record.

1. We are of opinion that the action is properly brought in the name of the commissioners, Code, §719 (aa), and a portion of the road being located in the county of Towns, and an agent being found therein to look after it and keep it in order, although he may have resided in another county, it was properly returned to the superior court of that county, which had jurisdiction to hear and determine it, under §719 (dd) of the Code. That it was competent for the legislature to change the law, as it existed at the time of the chartering this company, as to the manner of enforcing the rights of the state and the party in whose name each proceeding should be had, we entertain no doubt; indeed, the objection in the argument before this court was rather intimated than seriously insisted on.

2. By the 13th section of the act of the legislature, incorporating this company, the only penalty or forfeiture incurred for failing to keep its road in good and sufficient repair, according to the intent or meaning of the act, was that its toll gates should be thrown and kept open until it was put in repair. It is insisted that this was one of the conditions upon which the company accepted the charter; that it was a part of the contract, and that it was not competent for the general assembly, in 1878, to prescribe another and different penalty for the failure of the company to keep its covenant with the state in this respect. We agree to the proposition that this thirteenth section of the charter is a part of the company's contract with the state, and that different and more onerous terms are imposed by the act of 1878 than the foregoing. We are further satisfied that the legislature had no right or constitutional power to repeal, modify or change charters

granted prior to the first day of January, 1863, when the Code went into effect, without the consent of the corporation. But in this instance, we think it would be going quite too far to attribute to them, in the face of existing legislation upon the subject, any such purpose. By the Code, §16S2, it is expressly declared that, in all cases of private charters "hereafter (thereafter) granted, the state reserves the right to withdraw the franchise, unless such right is expressly negatived in the charter." The next section (1683) enacts that private corporations theretofore created without the reservation of the right of dissolution, and where individual rights have become vested, are not subject to dissolution at the will of the state. That the state constitution imposes similar restraints upon the general assembly as to these old charters, see Code, §§5025, 5026, 5096. Our conclusion is, therefore, that the penalties prescribed by the act of 1878 are inapplicable to this charter, and that this action cannot be maintained. This renders the consideration of other questions made unnecessary. If the company shall fail in its duties to the public, the commissioners of turnpikes may proceed to forfeit the charter, or they may enforce the penalty, as their predecessors, the justices of the inferior court, might have done, to the extent and in the manner designated in the 13th section of the act of incorporation.

Judgment reversed.